ORDERED.

**Dated:  May 20, 2021**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Gregory Todd Givans, | ) | Case No. 6:19-bk-01928-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

## AMENDED[*] MEMORANDUM OPINION
## ON CROSS MOTIONS FOR TURNOVER
## AND OVERRULING OBJECTION TO EXEMPTION AS TO TAX REFUNDS

Chapter 7 Trustee, Carla Musselman ("Trustee"), and the Debtor's non-filing spouse, Marna Givans, dispute whether any portion of the Debtor's federal tax refunds for 2018 and 2019 is property of the Debtor's estate. The Trustee moved for turnover of *2018* Tax Refund (the "Trustee's Motion").[1] Mrs. Givans moved for turnover of *2019* Joint Tax Refund ("Givans' Motion").[2] And the Debtor amended his Bankruptcy Schedule C to claim the 2018 and 2019 tax refunds (collectively, the "Refunds")

---

[*] Amended only to correct scrivener's error on line 11 of page 4 where the word "not" was inadvertently omitted.
[1] Doc. No. 61. The Debtor's Response to the Trustee's Motion for Turnover is Doc. No. 66.
[2] Doc. No. 78. The Trustee's Response, as amended, to Mrs. Givans' Motion for Turnover is Doc. Nos. 84 and 85.

exempt as tenants by the entirety ("TBE").[3] The Trustee has objected to this amended claim of exemption (the "Objection").[4] Because the Trustee failed to rebut the presumption that the Debtor and Mrs. Givans own the Refunds as TBE, the Court finds the Refunds are exempt from administration by the Trustee.

On March 26, 2019,[5] the Debtor filed this case under Chapter 7 of the Bankruptcy Code.[6] Carla Musselman was appointed the Chapter 7 Trustee. After the bankruptcy filing, the Debtor and his spouse, Mrs. Givans,[7] filed their 2018 and 2019 federal income tax returns, which disclosed they would receive a $11,677 refund for 2018 and a $10,392.76 refund for 2019.[8] The United States Treasury sent the 2018 tax refund to the Debtor and Mrs. Givans,[9] and then sent the 2019 tax refund check to the Trustee, payable to the Debtor and Mrs. Givans.[10] Mrs. Givans deposited the 2018 tax refund into her personal bank account.[11] As to the 2019 tax refund, all parties agree the Trustee's claim is limited to $2,390.33, which she is holding.[12]

The Trustee and Mrs. Givans then filed their respective motions for turnover of the Refunds and responses. About seven months after filing the Trustee's Motion, the

---

[3] Doc. No. 123.
[4] Doc. No. 138. The Court held a trial on the Motions for Turnover and Objection on January 19, 2021.
[5] Doc. No. 1.
[6] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101, et. seq.
[7] The Debtor and Mrs. Givans have been married for over 20 years. Doc. No. 96 at 2, Mem. Op. Granting Trustee's Mot. for Summ. J.
[8] Doc. No. 143, Ex. 2 and Ex. 7.
[9] Doc. No. 143, Ex. 6.
[10] Doc. No. 143, Ex. 7.
[11] Doc. No. 143, Ex. 6.
[12] Doc. Nos. 84, 85, and 90. The Trustee is only entitled to the pro-rata portion of the refund attributable to period before the bankruptcy petition was filed on March 26, 2019.

Debtor amended his Bankruptcy Schedule C to claim the Refunds exempt as TBE.[13] The Trustee then timely filed the Objection.[14]

Debtors in bankruptcy may claim certain property as exempt from creditors to facilitate their "fresh start."[15] A debtor's claim of exemptions is presumptively valid unless a party-in-interest, such as the Trustee, objects.[16] The Trustee must establish by a preponderance of evidence that the Debtor's exemptions are not properly claimed.[17] "Once the objecting party has made a prima facie showing, the burden shifts to the Debtor to prove his entitlement to the exemption."[18]

Florida has a long history of allowing spouses to own property as tenants by the entireties.[19] The Debtor and Mrs. Givans were married approximately 20 years ago, long before this bankruptcy case. Florida entireties law provides that TBE property[20] belongs to neither individual spouse; each spouse holds the "whole or the entirety, and not a share, moiety, or divisible part."[21] Spouses can own both real and personal

---

[13] Doc. No. 123.

[14] Doc. No. 138.

[15] *In re Dowell*, 456 B.R. 578, 580 (Bankr. M.D. Fla. 2011) (citing *United States v. Sec. Indus. Bank*, 459 U.S. 70, 83, 103 S. Ct. 407, 415, 74 L. Ed. 2d 235 (1982) (Blackmun, J., concurring)).

[16] *See* 11 U.S.C. § 522(l).

[17] Fed. R. Bankr. P. 4003(c); *In re Pettit*, 224 B.R. 834, 840 (Bankr. M.D. Fla. 1998).

[18] *In re Rightmyer*, 156 B.R. 690, 692 (Bankr. M.D. Fla. 1993).

[19] *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52 (Fla. 2001).

[20] Six unities must exist simultaneously for property to be owned as tenants by the entireties in Florida: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests must be identical); (3) unity of title (the interest must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). *Id.* "Should one of these unities never have existed or be destroyed, there is no entireties estate." *United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami, Fla.*, 894 F.2d 1511, 1514 (11th Cir. 1990). A presumption that marital personal property is held as tenants by the entireties arises when all six unities are present. *In re Daniels*, 309 B.R. 54, 59 (Bankr. M.D. Fla. 2004) (extending the presumption created in *Beal Bank* regarding marital bank accounts "to include all marital personal property, not just financial accounts").

[21] *Beal Bank*, 780 So. 2d at 53 (quoting *Bailey v. Smith*, 103 So. 833, 834 (Fla. 1925)).

property as TBE.[22] In the "*absence* of any controlling statute, express agreement, account statement, or other governing indicia that explicitly establishes a form of ownership other than tenancy by the entireties," personal property is presumed to be held as TBE.[23] Any party contending marital property is held in another form of ownership carries the burden of proof by a preponderance of the evidence to establish that no TBE ownership exists.[24]

The advantage of owning property as TBE is that, although *joint* creditors of both spouses can foreclose upon the TBE property, creditors holding claims against only one spouse cannot exercise any rights over the property.[25] Here, the Trustee does not allege the Debtor and Mrs. Givans have joint creditors. So, if the Refunds are owned by the couple as TBE, the Trustee may not collect the monies.

The Trustee argues the Refunds are not TBE property because the Debtor's wages are the sole source of funds generating the Refunds and because Mrs. Givans deposited the 2018 tax refund into her personal bank account. The Trustee also argues the Debtor's belated amendment claiming the Refunds as exempt TBE property was done in bad faith, causing the estate to incur substantial administrative expense litigating the TBE ownership.

The Court rejects these arguments finding the Trustee has failed to rebut TBE ownership of the Refunds. In *In re Hinton* and *In re Freeman*, I held married couples can

---

[22] *Id.*
[23] *In re Daniels*, 309 B.R. at 59.
[24] *Beal Bank*, 780 So. 2d at 58.
[25] *Id.* at 53 (citing *Winters v. Parks*, 91 So. 2d 649, 651 (Fla. 1956)).

own tax refunds as TBE.[26] Here, the Debtor and Mrs. Givans are married, they filed joint tax returns, they have not revoked this election, and they are jointly entitled to the Refunds, which qualifies them to own the Refunds as TBE. The six unities required for TBE ownership under *Beal Bank* are present for the Refunds.

The Trustee failed to rebut the presumption of TBE ownership. The subsequent deposit of TBE property—2018 refund—into Mrs. Givans' personal bank account alone, does not demonstrate the Refunds were not initially TBE.[27] And although the Trustee argues the Debtor's wages are the sole source of the Refunds which demonstrate the Refunds are not TBE, I examined this issue in *In re Hinton*.

In *In re Hinton*, the debtor and his non-filing spouse claimed their federal income tax refunds as TBE. The Chapter 7 trustee argued the court should analyze whether the debtor and his non-filing spouse initially had equal interests in the refunds,[28] arguing the court could apportion the refunds between the spouses based on their income contributions under the Internal Revenue Code and Eleventh Circuit decision, *Gordon v. United States*.[29] I disagreed, finding nothing in the IRS rules or in *Gordon* limited the ability of married spouses to elect to own federal income tax refunds as TBE.[30] Ownership of a federal tax refund as TBE is not limited by determining which

[26] *Dillworth v. Hinton (In re Hinton)*, 378 B.R. 371 (Bankr. M.D. Fla. 2007); *In re Freeman*, 387 B.R. 871 (Bankr. M.D. Fla. 2008).
[27] *Branch Banking & Trust Co. v. Maxwell*, No. 8:10-cv-02464-T-23AEP, 2012 WL 4078407, at *3 (M.D. Fla. Aug. 24, 2012) ("Absent contrary intent, the transfer of TBE property into a non-TBE account does not necessarily terminate its TBE status.").
[28] *In re Hinton*, 378 B.R. at 378.
[29] *Gordon v. United States*, 757 F.2d 1157 (11th Cir. 1985).
[30] *In re Hinton*, 378 B.R. at 379.

spouse contributed the most income.[31] And since *In re Hinton*, many courts agree tax refunds may be claimed by spouses as TBE property.[32]

The Trustee last argues the Debtor acted in bad faith by belatedly claiming the Refunds as exempt TBE. I see no misconduct or bad faith. The Debtor filed an initial response to the Trustee's Motion within 30 days asserting the Refunds are exempt as TBE.[33] And Givans' Motion also argues the Refunds are exempt as TBE.[34] Admittedly, the Debtor waited to formally amend his Schedule C to claim the Refunds exempt as TBE, but the Trustee can assert no surprise or prejudice given the Debtor told her about his position in his initial response to the Trustee's Motion.

Rule 1009 provides a schedule "may be amended by the debtor as a matter of course at any time before the case is closed."[35] Here, the Debtor simply amended his schedule to claim the Refunds exempt as TBE. The tax returns had not been filed when the Debtor filed this case. Trustee had notice shortly after she moved for turnover that the Debtor and Mrs. Givans intended to argue the Refunds were exempt as TBE. And

---

[31] *Id.*

[32] *Stevenson v. Uttermohlen (In re Uttermohlen)*, 506 B.R. 142 (M.D. Fla. 2012) (tax refund solely related to Debtor's income could be claimed as TBE); *In re Newcomb*, 483 B.R. 554 (Bankr. M.D. Fla. 2012) (joint tax refunds may be claimed as TBE property); *In re Gorny*, No. 6:08-bk-00007, 2008 WL 5606583, at *8 (Bankr. M.D. Fla. Aug. 29, 2008) (same); *Gibson v. Wells Fargo Bank, N.A.*, 255 So. 3d 944 (Fla. 2d DCA 2018) (same). *Contra In re Ascuntar*, 487 B.R. 319 (Bankr. S.D. Fla. 2013) (joint tax refund could not be claimed TBE); *In re Morine*, 391 B.R. 480 (Bankr. M.D. Fla. 2008) (same).

[33] Doc. No. 66 ¶ 3.

[34] Doc. No. 78 ¶ 6.

[35] Fed. R. Bankr. P. 1009(a).

significantly, the Trustee has identified no Bankruptcy Code provision or state law doctrine to support denial of the Debtor's TBE exemption due to bad faith.[36]

The Trustee failed to rebut the presumption that the Debtor and Mrs. Givans own the Refunds as TBE. The Trustee showed no controlling statute, express agreement, account statement, or other governing indicia that explicitly establishes a form of ownership *other* than TBE. The Debtor also did not claim the Refunds exempt as TBE in bad faith. Accordingly, it is

**ORDERED**:

1. Trustee's Objection to Exemption of the Refunds (Doc. No. 123) is overruled.

2. Trustee's Motion for Turnover (Doc. No. 61) is denied. Debtor and Mrs. Givans may retain the entire 2018 federal tax refund.

3. Mrs. Givans' Motion for Turnover (Doc. No. 78) is granted. Trustee is directed to promptly pay the portion of the 2019 federal tax refund ($2,390.33) she is holding jointly to Debtor and Mrs. Givans.

### ###

Attorney, William Reed, will serve a copy of this order on all interested parties who are non-CM/ECF users and file a proof of service within three days of entry of the order.

---

[36] *See Law v. Siegel*, 571 U.S. 415, 425, 134 S. Ct. 1188, 1196-97, 188 L. Ed. 2d 146 (2014) (striking down any notion of a bankruptcy court's "general, equitable power . . . to deny exemptions based on a debtor's bad-faith conduct," holding that "*federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code").